IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-01564-LTB-KMT

VICTORIA E. YARBROUGH,

       Plaintiff,
v.

ADT SECURITY SERVICES, INC.,

       Defendant.
___

ORDER
___

This wrongful termination case is before me on a motion for summary judgment filed by Defendant ADT Security Services, Inc. ("ADT"), seeking dismissal of the claims raised against it by Plaintiff, its former employee, Victoria E. Yarbrough. **[Doc #79]** Oral arguments will not materially aid in the resolution of this motion. After consideration of the parties' briefs and related attachments, and for the reasons stated below, I GRANT ADT's motion for summary judgment and, as a result, I ORDER that Yarbrough's complaint shall be dismissed and judgment shall enter in favor of ADT.

## I. UNDISPUTED FACTS

ADT is a national provider of security services for use in protecting property against fires and intruders. Yarbrough worked for ADT at its Aurora, Colorado facility, from August 1997 through her termination on January 30, 2007. At the time of her termination, Yarbrough was a Team Lead in the Accounts Payable Department.

1

On October 31, 2006, Yarbrough was involved in a dispute with a fellow ADT employee, Marcina Pollard.  Following this incident, and an investigation by the Human Resources Manager for the Accounts Payable Department, both Yarbrough and Pollard were issued written warnings.  Yarbrough's written warning stated in part that: "On October 31, 2006 you were engaged in an argument with another employee. You were raising your voice and yelling, causing a major distraction on the floor. This behavior will not be tolerated.  As a Team Leader, you are expected to resolve confrontations and not participate in them."  Both written warnings stated that any further incidents will result in further corrective action up to and including termination with ADT.

On November 9, 2006, Yarbrough called the Aurora police to complain about Pollard's conduct. The Aurora police conducted an investigation, but no criminal action was initiated.  On November 13, 2006, ADT management spoke with Yarbrough and Pollard in separate meetings about their inability to get along.

On January 23, 2007, Yarbrough obtained a Temporary Restraining Order (the "TRO") against Pollard based on allegations that:  1) Pollard had followed her home from work on January 22, 2007, while making "obscene gestures and verbally yelling words out" and 2) that on October 31, 2006, Pollard "came up behind [Yarbrough] and shoved [Yarbrough] with her right shoulder and chest into [Yarbrough's] back."  That afternoon, the Aurora police served the TRO on Pollard at the ADT facility.   ADT placed Pollard on administrative leave the next day, on January 24, 2007.  On January 25, 2007, ADT management decided to terminate both Yarbrough and Pollard.  As a result, on January 30, 2007, Yarbrough was terminated from her employment with ADT for creating a distraction in the workplace that negatively impacted her

2

co-workers.

Thereafter, Yarbrough filed her complaint in this matter seeking damages against ADT for the following state law claims: wrongful discharge pursuant to Colo Stat. § 24-34-402.5; wrongful discharge as a violation of public policy; negligent infliction of emotional distress; and intentional infliction of emotional distress. The case was removed by ADT from state court to this court on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332, and the parties to not dispute that Colorado law applies here.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Id.* at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his or her complaint, but must respond with specific facts showing the existence of a genuine factual

3

issue to be tried.  *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial.  *Id.* at 323.   However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Mares v. ConAgra Poultry Co., supra,* 971 F.2d at 494.

### III. ANALYSIS

**A.  Wrongful Discharge Pursuant to § 24-34-402.5**

In its motion seeking summary judgment, ADT first asserts that Yarbrough cannot establish her claim made pursuant to Colorado's Lawful Off-Duty Activities Statute, Colo. Rev. Stat. § 24-34-402.5.

Section 24-34-402.5 provides – with several exceptions not argued by the parties here – that it is unlawful "for an employer to terminate the employment of any employee due to that employee's engaging in any lawful activity off the premises of the employer during nonworking hours ...".  To establish a claim under § 24-34-402.5, Yarbrough must show:  (1) she engaged in a lawful activity off the premises of the employer during non-working hours; and (2) she was terminated for engaging in this activity.  *Marsh v. Delta Airlines*, 952 F. Supp.1458, 1461 (D. Colo. 1997).

The "lawful activity" relied upon for the basis of her § 24-34-402.5 claim is Yarbrough's acquisition of the TRO against Pollard on January 23, 2007.  ADT first maintains that the activity of obtaining the TRO in this case does not constitute lawful off-the-job conduct

4

contemplated by § 24-34-402.5  *See Gwin v. Chesrown Chevrolet, Inc.,* 931 P.2d 466, 469 (Colo. App. 1996)(the purpose of §24-34-402.5 is to protect an employee's off-the-job privacy); *Marsh v. Delta Air Lines, supra,* 952 F.Supp. at 1462 (§ 24-34-402.5 "was meant to provide a shield to employees who engage in activities that are personally distasteful to their employer, but which activities are legal and unrelated to an employee's job duties" such as "homosexuals who would otherwise be fired by an employer who discriminates against gay people, members of Ross Perot's new political party who are employed by a fervent democrat, or even smokers who are employed by an employer with strong anti-tobacco feelings").  Although I agree that the statute does not cover the activity at issue here, even assuming it does, I agree with ADT that there is insufficient evidentiary support, even when it is viewed in favor of Yarbrough, to sustain her claim that she was terminated for acquiring the TRO.

When Yarbrough was terminated, the reason provided in her termination letter was that it was "for creating a distraction in the workplace that negatively impacted co-workers." Yarbrough asserts that this reason was pretextual.  Specifically, she maintains that a casual connection between her action in obtaining the TRO, and her termination a week later, raises an inference of retaliation that constitutes sufficient evidence to create a genuine issue of material fact.

There is very little Colorado case law applying § 24-34-402.5, and my research reveals no authority analyzing the proof necessary for a plaintiff to demonstrate that he or she was terminated for engaging in a lawful activity off the premises of the employer during non-working hours.  *See generally Marsh v. Delta Airlines*, *supra*, 952 F. Supp. at 1461 (noting the lack of Colorado cases interpreting the substantive portions of the statute).   As a result, both parties cite

5

to Tenth Circuit case law that looks at the issue in the context of a claim for retaliatory termination based on the protected activity of the exercise of free speech.

Specifically, both parties rely on *Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005), in which employees claimed they were subjected to adverse employment actions after they spoke out on matter of public concern related to their employer. *Maestas v. Segura, supra,* has questionable application to this state statutory claim, but I will address it. In reviewing whether the employees' speech was a "substantial motivating factor" behind the employer's decision – which is the third element or the causation requirement in cases of employer retaliation in a free speech context – the Tenth Circuit held that "[a]dverse action in close proximity to protected speech may warrant an inference of retaliatory motive." *Id.* (*citing Baca v. Sklar,* 398 F.3d 1210, 1221 (10th Cir. 2005)); *see also Weaver v. Chavez*, 458 F.3d 1096, 1098-1099 (10th Cir. 2006)("protected conduct closely followed by adverse action may justify an inference of retaliatory motive"). As such, Yarbrough argues that in this case the temporal proximity of her termination and "knowledge of the protected activity" are together "sufficient to militate against granting ADT's motion for summary judgment."

However, the court in *Maestas v. Segura*, *supra*, went on to say that "evidence such as a long delay between the [protected activity] and challenged conduct, or evidence of intervening events, tend to undermine any inference of retaliatory motive and weaken the causal link." 416 F.3d at 1189 (citations omitted). As a result, the Tenth Circuit held that the employees failed to present sufficient evidence linking their speech to their subsequent transfers based on the intervening event of budget cuts, which was the employer's proffered reason for the adverse action. The court upheld the trial court's grant of summary judgment on the basis that the

6

employees "presented insufficient evidence for a reasonable jury to conclude that an improper motive played a substantial part in [the] decision to transfer them." *Id.* at 1190.

Likewise, in this case the evidence is insufficient for a reasonable jury to conclude that Yarbrough was terminated for engaging in the alleged protected activity of obtaining a TRO. The evidence is that Yarbrough was first disciplined on November 8, 2006, after she was involved in a dispute with Pollard. Although Yarbrough contests the nature of the incident – and exactly what happened including whether or not she was pushed by Pollard – she does not contest that she was issued a written warning following the investigation thereof, and that the warning stated that "any further incidents will result in further corrective action up to and including termination."

The indisputable evidence further shows that after the time of their warnings, both Yarbrough and Pollard continued to complain to ADT management about each other's behavior. This included a charge by Yarbrough on November 9th that Pollard had again pushed her in another confrontation, and Yarbrough's report to the Aurora police regarding Pollard's alleged conduct. It is also undisputed that Pollard complained to ADT about Yarbrough's behavior following the warning. As a result, on November 13th, ADT management had separate meetings with both Yarbrough and Pollard to discuss their inability to get along.

ADT asserts that after this meeting, Yarbrough and Pollard "engaged in a personal feud which was distracting and a disruption in the work place." In support, ADT provides declarations of four other ADT employees who averred that following the October 31st incident, Yarbrough and Pollard continued to engage in a personal conflict causing increased tension, gossip and disruption in the workplace. Valeria Malveux declared that she complained to

7

management that "Yarbrough's conduct was causing morale problems and had created a hostile work environment." Rhonda Koskimaki declared that after the incident, Yarbrough and Pollard engaged in a continued feud which included giving dirty looks, bickering about each other and spreading rumor, and that neither of them could "set aside their differences and get along." Deborah Ranney declared that Yarbrough and Pollard continued to feud following the October 31st "verbal altercation" and that "[t]he anxiety and tension caused by this feud got to the point that I started looking for other employment" as their "conduct had created a hostile work environment." Tiffany Rowe averred that following the incident, the two continued to be in a personal feud which "caused increased gossip on the floor and caused a disruption in the work environment." All the employees averred that after Yarbrough and Pollard's termination their workplace has been more relaxed and there has been less tension and disruptions.

Yarbrough disputes that she engaged in a personal feud with Pollard which was distracting and a disruption in the work place after the October 31st incident. However, Yarbrough fails to provide evidence that would contradict the other employees' declarations, except, of course, her self-serving statements. I reject her argument that the declarations do not support the claim that she was disruptive in that they contain unsupported conclusory statements. In addition, I likewise discount her groundless conclusory assertion that it is "clear" that the statements were "concocted and contrived by ADT through its influence over current employees."

After a period of about ten weeks, another alleged incident occurred between Yarbrough and Pollard after work, resulting in Yarbrough obtaining the TRO against Pollard on January 23, 2007. Service of the TRO in the workplace itself proved disruptive. The next day, January 24,

2007, several employees voiced concerns about the tension between Yarbrough and Pollard. DebraLynn Rodasta emailed management, confirming a previous verbal conversation, which indicates that "[t]he situation has the potential to become hostile or [a] dangerous work environment." Judith Thomas likewise emailed management on January 24th or 25th indicating that she did not feel the situation would stop and, as a result, "there is a hostile work environment here" and "I do feel uncomfortable sitting in my cube as I do not know what is going to be said next." Valeria Malveuax's January 24, 2007 email indicated that "Yarbrough's conduct was causing morale problems and had created a hostile work environment." Yarbrough's conclusory assertion that these complaints were solicited does not discredit their evidentiary value related to Yarbrough's behavior that, in turn, negatively impacted her co-workers.

On January 25, 2007, Yarbrough's supervisor, Karen Rantzau, the Accounts Payable Department Manager, asked Yarbrough to explain why she had not been at her desk. Yarbrough related that Rantzau "did not have the right to tell her what she could do or who she could talk to, that she just found out that confidentiality did not matter because I was stepping all over her right to 'Freedom of Speech', and that there was nothing I could do to her." Rantzau responded that "as long as she was on the clock that I did have the right to tell her she needed to be at her desk working." In response, Yarbrough argues only that this information is "demonstrably false," but does not provide any invalidating evidence in support of this allegation.

Finally, ADT provides a declaration from the ADT's Corporate Controller that "[b]ased on the information and concerns expressed [by other employees on January 24, 2007] and Ms. Yarbrough's disrespectful comments towards her supervisor" ADT management "collectively

9

determined to terminate both Ms. Yarbrough and Ms. Pollard for creating a distraction in the workplace that negatively impacted their co-workers." Yarbrough and Pollard were both subsequently terminated on January 30, 2007. Yarbrough disputes the reason she was terminated, but does not provide any substantive contradictory evidence except that she was terminated only after she obtained the TRO.

Yarbrough's evidence intended to show the existence of a material issue of fact consists solely of her own self-serving declaration in which she alleges that she: "did not engage in any actions or conduct which caused tension at ADT"; "did not engage in any actions or conduct to 'bother Accounts Payable employees in an attempt to obtain their allegiance'"; "was not involved in a 'personal feud' with Ms. Pollard"; and "did not engage in any actions of conduct which caused a distraction or adversely effected employee morale at ADT" after receiving the November 2006 written warning and prior to her termination in January 2007. However, the affidavit reflects her subjective beliefs, and consists of self-serving assertions that are not corroborated by reference to any record evidence. "To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Murray v. City of Sapulpa,* 45 F.3d 1417, 1422 (10th Cir.1995)(*quoting Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991)).

Yarbrough also provides an unsigned statement from ADT employee Judy Thompson, dated June 26, 2008, in which she asserts that Karen Rantzau was intimidating to work for, and makes the inference that Rantzau pressured her to make an inaccurate statement about the incident that prompted Yarbrough to obtain the TRO. It also intimates that Rantzau wanted

Thompson to, if asked, provide "the same account" of the incident that happened in October of 2006. Even if this statement constituted admissible evidence, it is nonetheless not relevant to a material issue of genuine fact; that is, whether ADT terminated Yarbrough for causing or creating a distraction in the workplace that negatively impacted their co-workers, or for obtaining the TRO. Ms. Thompson does not recant or qualify her declaration or her statements about the tension in the workplace and hostile work environment caused by Yarbrough and Pollard's inability to work together.

Finally, Yarbrough refers to an email exchange, dated January 28, 2007, in which Karen Rantzau apparently attempted to ascertain proof necessary to show lack of productivity in the Accounts Payable Department, but found that "[t]he customer service stats show all current." While Yarbrough has failed to provide the court with a copy of this email, ADT admits its existence. Yarbrough is apparently arguing that Rantzau's attempt to document productivity constitutes evidence or the inference that the reason for her termination was inaccurate or untrue. ADT does not dispute that her job performance was acceptable, however, but rather that her inability to work with Pollard was destructive and causing a distraction at her workplace and for her co-workers. That ADT looked to objective measurements of productivity to assess this distraction does not lead to the inference that the reason given for her termination was pretextual.

Although Yarbrough's termination seven days after she engaged in the alleged protected activity – namely obtaining a TRO against a co-worker – raises an inference of retaliatory motive, the history of the conflict and the intervening events undermines that inference and weakens the casual link as was the case in *Maestas v. Segura, supra.* The overwhelming evidence here is that after Yarbrough and Pollard were involved in an incident or confrontation

in October of 2006, they were both provided with written warnings to resolve their conflicts rather than participate in them, or risk termination. They didn't and, directly thereafter, ADT management was made aware of continued tension between Yarbrough and Pollard which resulted in separate meeting about their continued inability to work together. A little over two months later, directly after Yarbrough obtained the TRO and Pollard was suspended, ADT management was made aware that other employees were being adversely effected by Yarbrough and Pollard's obvious inability to get along. As a result, ADT terminated both Yarbrough and Pollard who, it should be noted, did not engage in any protected activity. No reasonable jury could find that Yarbrough was terminated for obtaining the TRO. Rather, there can be no genuine dispute that she was terminated precisely for the reason stated by ADT.

As such, I conclude that Yarbrough has failed to met her burden of showing that a genuine issue of material fact exists to preclude summary judgment in favor of ADT on her claim of wrongful discharge pursuant to § 24-34-402.5.

**B. Wrongful Discharge as a Violation of Public Policy**

Yarbrough also asserts a related claim against ADT for wrongful discharge in violation of public policy. Specifically, she maintains that her termination for obtaining the TRO violates a clearly expressed Colorado public policy set forth in Colo. Rev. Stat. § 13-14-102(1), which provides that "[t]he general assembly hereby finds that the issuance and enforcement of protection orders are of paramount importance in the state of Colorado because protection orders promote safety, reduce violence, and prevent serious harm and death." But this claim falters for the same reasons her § 24-34-402.5 claim fails.

Colorado recognizes an exception to the general rule that employment contracts are at-

will in situations where the employer terminates its employee in violation of public policy. "The essence of the public policy exception is that an employee will have a cognizable claim for wrongful discharge 'if the discharge of the employee contravenes a clear mandate of public policy.'" *Rocky Mountain Hosp. and Medical Service v. Mariani,* 916 P.2d 519, 523 -524 (Colo. 1996)(*quoting Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 106 (Colo. 1992)). The elements of a wrongful discharge in violation of public policy claim are as follows:

> (1) the employer directed the employee to perform an illegal act as part of his work-related duties or prohibited that employee from performing a public duty or exercising a job-related right or privilege; (2) the directed action or prohibition would violate a specific statute or undermine clearly-expressed public policy relating to the employee's responsibilities as a citizen or the employee's rights and privileges as a worker; (3) the employee was terminated for refusing to perform the action directed or for performing a public duty or exercising a job-related right or privilege despite the employer's prohibition; and (4) the employer knew or should have known that the employee's refusal to comply was based on the employee's reasonable belief that the action was illegal, contrary to state policy, or violative of the employee's legal rights and privileges as a worker.

*Caspar v. Lucent Technologies, Inc.,* 280 F.Supp.2d 1246, 1249 (D.Colo. 2003)(*citing Martin Marietta Corp. v. Lorenz, supra*, 823 P.2d at 109); *see also Hoyt v. Target Stores,* 981 P.2d 188, 190 (Colo. App. 1998); *Colo. Jury Inst. 4th* § 31:12.

Moreover, the termination in this case does fit the elements of a wrongful discharge for violation of public policy claim under Colorado law because the act of obtaining a TRO cannot be characterized as the performance of a public duty, such as the fulfillment of jury duty, or the exercise of a job-related right or privilege, such as the filing of a workers' compensation claim. *See generally Caspar v. Lucent Technologies, supra*, 280 F.Supp.2d at 1250 (*citing Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975)(addressing an employee's refusal to forsake the performance of jury duty); *Frampton v. Cent. Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425

13

(1973)(addressing employee's refusal to forgo the right to file a workers' compensation claim)). A public-policy wrongful discharge has been generally defined as "an action that involves a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff. . .". *Crawford Rehabilitation Services, Inc. v. Weissman,* 938 P.2d 540, 552 (Colo. 1997). As such, a division of the Colorado Court of Appeals affirmed the trial court's dismissal of a wrongful termination claim when the employee alleged she was terminated because she filed a motion for a temporary restraining order against her employer. *See Slaughter v. John Elway Dodge Southwest/AutoNation,* 107 P.3d 1165, 1168 -1169 (Colo. App. 2005).

And again, because I have ruled that Yarbrough has failed to met her burden of showing a genuine issue of material fact related to her allegation that ADT terminated her because she obtained the TRO, she has likewise failed to prove the third element of a wrongful termination claim for violation of a public policy – that she was "terminated for performing a public duty or exercising a job-related right or privilege despite the employer's prohibition." *See discussion supra*.

## C. Negligent Infliction of Emotional Distress

Yarbrough also alleges a tort claim against ADT for negligent infliction for emotional distress. However, "the fact that an employer may know or reasonably expect the termination of an at-will employee to cause emotional distress does not impose upon the employer a legal duty to refrain from firing employees." *Bigby v. Big 3 Supply Co.,* 937 P.2d 794, 801 (Colo. App. 1996). Because "[t]he first element of a negligence claim is the existence of a legal duty which the defendant owes to the plaintiff," Colorado courts have refused to refused to recognize the tort of negligent termination. *Id.* (*citing Wing v. JMB Property Management Corp.,* 714 P.2d 916

(Colo. App. 1985); *Chellsen v. Pena*, 857 P.2d 472 (Colo. App. 1992)(termination of employment should not be translated into a tort in order to avoid an obstacle to recovery on a contract theory)). As such, ADT is entitled to summary judgment in its favor on Yarbrough's claim for negligent infliction of emotional distress related to her termination.

**D. Intentional Infliction of Emotional Distress**

Finally, Yarbrough asserts a claim against ADT for intentional infliction of emotional distress related to her termination. The elements of this tort are: (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) resulting in severe emotional distress. *Culpepper v. Pearl St. Bldg., Inc.,* 877 P.2d 877, 882 (Colo. 1994); *see also Colo. Jury Inst. 4th* § 23:1

In Colorado, the tort of intentional infliction of emotional distress is extremely limited. Therefore, a mere allegation by an employee that he or she was dismissed wrongfully fails to state a claim for intentional infliction of emotional distress. *Bellairs v. Coors Brewing Co.,* 907 F.Supp. 1448, 1459 (D.Colo. 1995), *aff'd,* 107 F.3d 880 (10th Cir.1997). "[T]he mere firing of an employee, without conduct specifically calculated to cause emotional distress to the employee, is not enough to support a claim based on outrageous conduct." *Barham v. Scalia*, 928 P.2d 1381, 1385 -1386 (Colo. App. 1996); *see also Katz v. City of Aurora,* 85 F.Supp.2d 1012, 1021 (D. Colo. 2000)(citations omitted).

Yarbrough asserts that when the facts are viewed in the light most favorable to her, her claim of intentional infliction of emotional distress survives summary judgment. Specifically, she refers to the following in support of her claim: 1) the October 31st incident – which she contends included a physical assault of her by Pollard – was not properly investigated; 2) her

15

supervisor lied to upper management about that assault; 3) she was improperly given a written warning following the October 31st incident "even though she had not engaged in any improper conduct;" 4) a co-worker – presumably Judy Thompson – was "forced to lie about Ms. Yarbrough's conduct by ADT officials;" and 5) ADT officials conspired to create performance and other false bases to support the wrongful termination.

As discussed, these assertions are neither supported by competent evidence, nor do they relate to a material issue of fact. In any event, as a matter of law, they do not rise to the level of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Culpepper v. Pearl St. Bldg., supra,* 877 P.2d at 882. It is the initial responsibility of a court to determine whether reasonable persons could differ on the question of whether conduct is outrageous is generally one of fact to be determined by a jury. *McCarty v. Kaiser-Hill Co., L.L.C.,* 15 P.3d 1122, 1126 (Colo. App. 2000).

In addition, Yarbrough has not put forth sufficient evidence to allow a reasonable jury to conclude that her termination, even if it was outrageous, resulted in severe emotional distress. *See Therrien v. United Air Lines, Inc.,* 670 F.Supp. 1517, 1525 (D. Colo.1987). Her claimed distress of "loss of self-esteem, embarrassment, feeling depressed, and worry that she might not be able to provide for her family" is, without more, insufficient as a matter of law to prove severe emotional distress. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* (*quoting Restatement (Second) of Torts* § 46 comment j).

### E. Defamation

Yarbrough does not oppose ADT's request for summary judgment on her defamation claim; rather she "agrees to withdraw her claim for defamation." As such, I will enter summary judgment in ADT's favor on this claim as well.

ACCORDINGLY, Defendant ADT Security Services Inc.'s Motion for Summary Judgment [**Doc # 79**] is GRANTED and Plaintiff Victoria E. Yarbrough's Complaint is DISMISSED WITH PREJUDICE. The Clerk of the Court shall ENTER JUDGMENT in favor of Defendant ADT, with COSTS AWARDED to Defendant.

Dated: August __6__, 2008, in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE